## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JULIA E. WRIGHT, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-0324 (RMU) |
| | : | | |
| v. | : | Document No.: | 9 |
| | : | | |
| WILLIAM N. HERMAN *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING THE PLAINTIFF'S MOTION TO AMEND AND SUPPLEMENT THE COMPLAINT

## I.  INTRODUCTION

This matter comes before the court on the plaintiff's motion to amend and supplement her first amended complaint.  Julia Wright (the "plaintiff"), brings this diversity suit against William Herman and Eric May (the "defendants"), seeking damages for alleged injuries arising out of the parties' business dealings as members of a Virginia limited liability company.  The plaintiff moves to amend her complaint to state with greater specificity her alternative theories of recovery against the defendants, to add claims against the defendants, to add a new defendant, and to supplement her complaint with events she discovered after she filed her first amended complaint.  The defendants argue that the plaintiff's proposed amended complaint is futile. Because the liberal pleading standards of the Federal Rules of Civil Procedure allow plaintiffs to allege alternative and inconsistent theories of liability, and because the plaintiff has alleged valid claims the ultimate merits of which will depend on fact-specific questions that may not be dismissed without benefit of discovery, the court grants leave to amend and supplement.

## II.  BACKGROUND

### A.  Factual Background

The plaintiff alleges as follows.  In January 2004, the plaintiff, a District of Columbia resident, and William Herman, a Maryland resident, agreed to form a project management and real estate development firm to carry out business within the District of Columbia.  1st Am. Compl. ¶ 7.  Although the plaintiff and Herman agreed to operate as partners, they chose to use an existing Virginia limited liability company formed by Herman as a "vehicle" to carry out their business.  *Id*.  The plaintiff and Herman renamed the existing company "CRA Urban, LLC."  *Id.*

The plaintiff and defendant Herman transferred assets to CRA Urban, LLC, bought office supplies and hired staff, and established office headquarters in the District of Columbia.  *Id*. ¶ 8. The plaintiff also made a $32,000 loan to CRA Urban, LLC.  *Id*.  On May 1, 2004, the plaintiff and Herman hired defendant Eric May, a Maryland resident, as a Vice President of CRA Urban, LLC.  *Id.*  May received a 10% interest in CRA Urban, LLC, Wright and Herman each reducing their interests to 45%.  *Id*. ¶ 11.  Together, Herman and May controlled a majority (55%) of CRA Urban, LLC shares.  *See id*.

In September 2004, after several months of profitable business, Herman and May conspired to exclude Wright from CRA Urban, LLC's management, profit distributions, and meetings, with the ultimate goal of excluding Wright from the business' future dealings and terminating her membership interest.  *Id*. ¶ 18.

**B.  Procedural History**

Wright filed her original complaint with this court on February 14, 2005, and amended as of right on March 10, 2005.  On March 28, 2005, the defendants filed a motion to dismiss or, in the alternative, for summary judgment.  On April 29, 2005, the plaintiff moved to amend her complaint for a second time to "more fully and clearly state the factual and legal basis" for her claims against the defendants, Pl.'s Mot. to Am. and Supp. at 1, based on two alternative theories of relief: (1) that a partnership existed between the plaintiff and the defendants,[1] or in the alternative, (2) that her specific injuries are of a type which affords her the right to bring a direct action against both defendants under Virginia's Limited Liability Company Act.[2]  The plaintiff also seeks to amend her complaint by adding additional claims against the defendants, including conversion, *id*., Att. A ("Proposed 2d Am. and Supp. Compl.") ¶¶ 46-55, civil conspiracy, *id*. ¶¶ 56-60, and a claim for equitable relief, *id*. ¶¶ 68-73.

The plaintiff seeks to supplement her previous complaint with newly-discovered facts. Specifically, the plaintiff alleges that, after attempting to gain information about the status of the bank account of CRA Urban, LLC, she discovered that Herman and May had drawn disbursements for themselves from the LLC's bank account in the amount of $40,000, issued checks from the bank account to their legal counsel, and provided the bank with a resolution barring Wright from any further access to information regarding the account.  *Id*. ¶¶ 20-21.  The resolution suggested that the plaintiff "had acted improperly in obtaining information from

---

[1]  In this regard, the plaintiff alleges damages resulting from defendants' breach of fiduciary duties and seeks a declaration of her partnership rights and an accounting and settlement of accounts between the partners.  Proposed 2d Am. and Supp. Compl. ¶ 26-35.

[2]  The plaintiff alleges damages to her rights under Virginia's Limited Liability Act, including management and participation rights, access to information, injuries stemming from defendants' false publications, wrongful transfer of CRA Urban, LLC assets to Urban Realty, LLC, wrongful deprivation of receipt of distributions, wrongful interference with the plaintiff's membership interest, and wrongful expulsion from CRA Urban, LLC altogether.  *Id*. ¶ 40.

Citibank regarding CRA Urban withdrawals and payments . . . [and] stat[ed] that her continued access to such information 'would in fact be a detriment' to CRA Urban." *Id*. ¶ 21.  The plaintiff further discovered that defendants Herman and May had formed a new company named Urban Realty, LLC under Maryland law.  *Id*. ¶ 22.  Finally, the plaintiff became aware in April 2005 of a statement released on behalf of Urban Realty, LLC, announcing the termination of CRA Urban, LLC and the formation of Urban Realty, LLC in its place; the statement indicated that CRA Urban, LLC had been unable to conduct normal business any longer "due to one of its professionals leaving the business and some resulting internal changes necessitated by this departure[.]"  *Id*. ¶ 24.  The plaintiff alleges that the assets of CRA Urban, LLC were misappropriated to form Urban Realty, LLC, *id*. ¶ 22, and she now seeks to add Urban Realty, LLC on the basis of these newly discovered facts, *id*. ¶ 61-67.  The plaintiff alleges that her interest in CRA Urban, LLC would now be worth approximately $1.1 million if not for the wrongful acts of the defendants.  *Id*. ¶ 16.

## III.  ANALYSIS

## A.  The Court Grants the Plaintiff's Motion to Amend and Supplement[3] the Complaint

### 1.  Legal Standard for a Motion to Amend Pursuant to Rule 15

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served.  FED. R. CIV. P. 15(a). Additionally, Rule 15(a) allows a party to amend its pleading to add a new party.[4]  *Id.*; *Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 499 (D.D.C. 1994); 6 FED. PRAC. & PROC. 2d § 1474.  According to our court of appeals, Rule 15(a) "guarantee[s] a plaintiff an absolute right" to amend the complaint once at any time so long as the defendant has not served a responsive pleading and the court has not decided a motion to dismiss.  *James V. Hurson Assocs., Inc. v. Glickman*, 229 F.3d 277, 282-83 (D.C. Cir. 2000) (citing FED. R. CIV. P. 15(a)).  If there is more

---

[3]  Rule 15(d) authorizes the court, "upon reasonable notice and upon such terms as are just," to permit a party to serve a supplemental pleading setting forth events which have happened since the date of the original complaint.  FED. R. CIV. P. 15(d).  Supplements under Rule 15(d) always require leave of the court, and the court has broad discretion in determining whether to allow supplemental pleadings in the interests of judicial economy and convenience.  *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002); *Miller v. Air Line Pilots Ass'n Int'l*, 2000 WL 362042, at * 1 (D.D.C. Mar. 30, 2000).  The defendants offer no reasons, and the court is aware of no reasons, why granting leave to supplement the complaint with the facts discovered by the plaintiff after her first amended complaint, including the addition of Urban Realty, LLC as a defendant, would be improper.  Because the defendants focus their arguments on the futility of the proposed amendments, the court will limit its analysis accordingly and allow the plaintiff to supplement the complaint as she has proposed.

[4]  A motion to amend a complaint to add a party may also implicate Federal Rules of Civil Procedure 20 and 21, the joinder rules.  *Oneida Indian Nation v. County of Oneida*, 199 F.R.D. 61, 72 (N.D.N.Y. 2000).  Once a responsive pleading has been served, however, the standard for adding a party is the same regardless of the rule under which the motion is made: the decision lies within the discretion of the court.  *Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 499 n.29 (D.D.C. 1994) (Lamberth, J.) (stating that "[i]t is well established that after a responsive pleading has been served, the standards for adding parties are the same whether the motion is made under Rule 15 or Rule 21"); *Oneida Indian Nation*, 199 F.R.D. at 72 (noting that "in practical terms there is little difference between [Rules 15, 20, and 21] in that they all leave the decision whether to permit or deny amendment to the district court's discretion"); 6 FED. PRAC. & PROC. 2d § 1474 (indicating that "the same basic standard for adding or dropping a party will apply whether the pleader moves under Rule 15(a) or Rule 21").

than one defendant, and not all have served responsive pleadings, the plaintiff may amend the complaint as a matter of course with regard to those defendants that have yet to answer.  6 FED. PRAC. & PROC. 2d § 1481.  Motions to dismiss and for summary judgment do not qualify as responsive pleadings for the purposes of Rule 15.  *James V. Hurson Assocs.*, 229 F.3d at 283; *Bowden v. United States*, 176 F.3d 552, 555 (D.C. Cir. 1999); *U.S. Info. Agency v. Krc*, 905 F.2d 389, 399 (D.C. Cir. 1990).

Once a responsive pleading is served, however, a plaintiff may amend the complaint only by leave of the court or by written consent of the adverse party.  FED. R. CIV. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The grant or denial of leave lies in the sound discretion of the district court.  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  The court must, however, heed Rule 15's mandate that leave is to be "freely given when justice so requires."  *Id.*; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083 (D.C. Cir. 1998). Indeed, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman*, 371 U.S. at 182.  Denial of leave to amend therefore constitutes an abuse of discretion unless the court gives sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory motive, undue prejudice, or repeated failure to cure deficiencies by previous amendments.  *Id.*; *Caribbean Broad. Sys.*, 148 F.3d at 1083.

Denial of leave to amend based on futility is warranted if the proposed claim would not survive a motion to dismiss.  *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  An amended complaint is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss.  *Robinson v. Detroit News, Inc.*, 211 F.

Supp. 2d 101, 114 (D.D.C. 2002) (quoting 3 MOORE'S FEDERAL PRACTICE § 15.15[3] (3d ed. 2000)); *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (affirming the district court's denial of leave to amend given the "little chance" that plaintiff would succeed on his claim).

## 2. The Plaintiff's Proposed Amended and Supplemented Complaint is not Futile for Lack of Subject Matter Jurisdiction[5]

### a. Legal Standard for Indispensable Parties under Rule 19

Under Federal Rule of Civil Procedure 19(a),

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

---

[5]  The defendants argue that once a party has moved for summary judgment, the party moving to amend must show that the proposed amendments have "substantial merit" and are supported by "substantial and convincing evidence." Opp'n at 7-9 (citing *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061 (7th Cir. 1979)). In *Verhein*, however, the parties had already begun discovery, and the plaintiff failed to file with the court a proposed amendment alleging any facts whatsoever against the party to be joined to the action. *Verhein*, 598 F.2d at 1063. The defendants also cite *Artman v. International Harvester, Inc.*, 355 F. Supp. 476 (W.D. Pa. 1972), for the proposition that an amended complaint following a motion for summary judgment must have "substantial and convincing evidence" to support it. Opp'n at 8. In *Artman*, the court considered a motion for judgment on the pleadings as a motion for summary judgment because both parties had submitted documents and evidence outside of the pleadings – specifically, the plaintiff had submitted several purchase orders as evidence of a valid contract between the parties. *Artman*, 355 F. Supp. at 479. This proffering of evidence by the plaintiff constituted a "piercing" of the pleadings such that treating the motion as one for summary judgment was appropriate. *Id.* at 481. Thus, the present case is distinguishable from both cases because discovery has not yet taken place, and the plaintiffs have alleged facts and legal theories corresponding to each of their claims. The final two examples that the defendants cite are equally inapposite. *See Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) (denying leave to amend after discovery and after a motion for summary judgment because amendments would unfairly prejudice the defendant); *Glesenkamp v. National Mutual Insurance Co.*, 71 F.R.D. 1, 4 (N.D. Cal. 1974) (denying a motion to amend, following a summary judgment motion, after plaintiff had certified that all depositions and discovery were complete after a year and a half to conduct discovery).

If the addition of a party who is indispensable under Rule 19(a) will deprive the court of subject matter jurisdiction, "the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." FED. R. CIV. P. 19(b).  The court may consider several factors in making this determination, including prejudice to the party or those already parties, the adequacy of a judgment in the person's absence, and whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  *Id*.  When these factors cannot be properly applied at the pleading stage, a court should "defer decision until the action [is] further advanced."  *Ilan-Gat Engineers, LTD. v. Antigua International Bank*, 659 F.2d 234, 241 (D.C. Cir. 1981).

### b.  CRA Urban, LLC is Not an Indispensable Party

The defendants argue that CRA Urban, LLC is an indispensable party the joinder of which would destroy diversity jurisdiction.  Opp'n at 6.[6]  For that reason, the defendants further argue that the plaintiff's proposed complaint is futile because it could not survive a Rule 12(b)(1) motion.  *Id*.  CRA Urban, LLC itself is not seeking joinder as an indispensable party, but the two defendants, who are the only shareholders besides the plaintiff and who control the majority of the LLC's shares, assert that, pursuant to Rule 19(a)(2)(i), the ability of CRA Urban, LLC to protect its "independent property interests and rights" in this action will be impeded by its absence.  Opp'n at 5.

---

[6]  The defendants argue in their motion to dismiss the first amended complaint that two different limited liability companies are indispensable parties: (1) CRA Urban Venture I, LLC, a limited liability company formed in the District of Columbia in which the plaintiff and both defendants each hold an equal 33 1/3% interest; and (2) Gage School LLC, a limited liability company formed in the District of Columbia which has as its sole member Gage School Holdings, LLC, a Delaware LLC of which CRA Urban Venture I, LLC is the managing member.  In the defendants' opposition, CRA Urban Venture I, LLC, is again mentioned, but the defendants focus their argument solely on the indispensability of CRA Urban, LLC.  The court limits its analysis accordingly.

Limited liability companies are assigned the citizenship of their members for federal diversity jurisdiction purposes. *Carden v. Arkoma Associates*, 494 U.S. 185, 197 (1990) (holding that non-incorporated associations such as limited partnerships carry the citizenship of their members for federal diversity jurisdiction purposes); *Gen. Tech. App., Inc. v. Exro Ltda*, 388 F.3d 114, 120-21 (4th Cir. 2004) (noting that a limited liability company is not a corporation under 28 U.S.C. § 1332, but is an unincorporated association whose citizenship is that of its members); *Shulman v. Voyou, LLC*, 305 F. Supp. 2d 36, 40 (D.D.C. 2004). The plaintiff, as a member of CRA Urban, LLC, would share citizenship in the District of Columbia with the defendants if CRA Urban, LLC is an indispensable party and joined as a defendant. The presence of CRA Urban, LLC in this action would destroy complete diversity among the parties and this court's subject matter jurisdiction. *Exro*, 388 F.3d at 120-21.

The defendants make no argument to justify the conclusion that the ability of CRA Urban, LLC to protect its interests would be impaired in its absence, or that its absence would prejudice any persons already parties. Several of the plaintiff's claims under Virginia's LLC Act result from the alleged dissolution and termination of CRA Urban, LLC, the assets of which were allegedly transferred to a new limited liability company in which the plaintiff has no membership interest. Proposed 2d Am. and Supp. Compl. ¶ 22. Evidence of the actual status of CRA Urban, LLC is essential to determining whether its interests need protection under Rule 19(a), and whether those interests would be prejudiced in its absence under Rule 19(b). *Ilan-Gat Engineers*, 659 F.2d at 242 (holding that there could be no prejudice under Rule 19(b) against the putative indispensable corporation if it no longer existed, thus necessitating the discovery process before making an indispensable party determination). Moreover, given the small size of this LLC and the fact that all shareholders are currently parties to this action, it is hard to image

that as a "practical matter" the technical presence of CRA Urban, LLC as a defendant is necessary to protect its interests. *See Omnioffices, Inc. v. Omnioffices, Inc.*, 2001 WL 1701683 at *8-10 (D.D.C. 2001) (finding a non-party corporation was adequately represented because its interests were "identically aligned" with the interests of an already joined party), *rev'd on other grounds, CarrAmerica Realty Corp. v. Kaidanow*, 321 F.3d 165 (D.C. Cir. 2003).

The defendants also ignore the Rule 19(b) factors that guide the decision of whether or not to join a party. *See Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987) (stating, in discussing the "good conscience" standard of Rule 19(b), that "very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible"). At this stage of the case, a "reasoned determination" cannot be made that without joining CRA Urban, LLC just resolution of this action is impossible. Thus, the plaintiff's proposed second amended complaint is not futile by virtue of necessitating the joinder of a party that would cause a jurisdictional defect.

### 3. The Plaintiff's Proposed Amended and Supplemented Complaint is not Futile for Failure to State a Claim

The defendants argue that the plaintiff's proposed second amended and supplemented complaint is futile because it could withstand a 12(b)(6) motion to dismiss for failure to state a claim. Opp'n at 3-8. They argue that the plaintiff cannot (1) prove any set of facts in support of her claim that a partnership existed between the parties, *id*. at 7-8, or (2) prove any set of facts that would allow her to bring suit under Virginia's Limited Liability Company Act individually, rather than derivatively on behalf of CRA Urban, LLC itself, *id*. at 5. Finally, the defendants argue that the plaintiff has failed to state a claim for conversion or equitable relief. *Id*. at 7-8.

### a.  Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests.  *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues."  *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted).  It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory."  *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Warren v. District of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park*, 348 F.3d at 1040.  Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Development v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242.  While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the

complaint or legal conclusions cast as factual allegations.  *Warren*, 353 F.3d at 39; *Browning*, 292 F.3d at 242.

### b.  Choice of Law

### i.  Legal Standard

Because the basis for jurisdiction in this case is diversity, the court must determine which choice-of-law principles to apply.  This court has held that "[i]n a diversity action, this Court sitting in the District of Columbia is obligated under *Eerie R. Co. v. Tompkins*, 304 U.S. 64, (1938), to apply the choice of law rules prevailing in this jurisdiction."  *Dowd v. Calabrese*, 589 F. Supp. 1206, 1210 (D.D.C. 1984) (applying *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

The District of Columbia's choice-of-law principles utilize the "'governmental interests' analysis, under which [the court] evaluates] the governmental policies underlying the applicable laws and determine[s] which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review."  *District of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995) (citing *Hercules & Co. v. Shama Restaurant*, 566 A.2d 31, 40-41 (D.C. 1989)). As part of this analysis, the court may also look to factors contained within the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 145, including: "(a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the place where the relationship is centered."  *See id*. (citing *Estrada v. Potomac Elec. Power Co.*, 488 A.2d 1359, 1361 n.2 (D.C. 1985)).

### ii.  Virginia Law Governs the Plaintiff's Claims

Although CRA Urban, LLC was formed in Virginia, the plaintiff alleges that she and the defendants formed a concurrent partnership in the District of Columbia, which is also the principal place of business of CRA Urban, LLC, and the location of its only office.  Proposed 2d Am. and Supp. Compl. ¶ 4.  No party is a resident of Virginia, and both of the defendants reside in Montgomery County, Maryland.  The plaintiff is a resident of the District of Columbia, and she alleges injuries occurring during the course of the parties' business dealings in the District of Columbia.  *See generally id*. ¶ 17.  While these facts establish a clear interest of the District of Columbia in having its substantive law applied, Virginia also has an interest in seeing its own substantive law applied because CRA Urban, LLC was established as a limited liability company under its laws.  *Shenandoah Associates Limited Partnership v. Tirana*, 182 F. Supp. 2d 14, 19 (D.D.C. 2001) (holding that Virginia has a significant interest in having its substantive law applied in a dispute over limited partnerships formed in Virginia).

Regardless of whether the relevant government interests weigh in favor of Virginia or the District of Columbia, Virginia law will govern the rights and remedies afforded under Virginia's LLC statute and the plaintiff's alternative theory of rights and remedies based on the alleged existence of a partnership.  *See generally* D.C. Code § 29-1052.  The District of Columbia requires that "the laws of the state or other jurisdiction under which a foreign limited liability company is formed governs its formation and internal affairs and the liability of its members and managers[.]"  D.C. Code § 29-1052.  This provision broadly encompasses the "internal affairs" of an LLC's members and managers, and effectuates a policy choice made by the District of Columbia that when parties choose to carry out a business relationship by forming an LLC in another state, that state's laws will govern all issues pertaining to their relationship as a result.

*See Labovitz v. The Washington Times Corp.*, 900 F. Supp. 500, 503 (D.D.C. 1995) (stating that "[w]hen a particular claim addresses matters of corporate governance or other internal affairs of the organization, most states apply the law of the state where the corporation is incorporated . . . and the District of Columbia follows suit") (citations omitted).  In this case, the court interprets § 29-1052 to include within the "internal affairs" of an LLC the decision by members to operate *inter sese* as partners, because such a decision has to do with the terms of the agreement entered into in forming an LLC.  The law of Virginia thus governs the formation, internal affairs, and liability of the members of CRA Urban, LLC, including their alleged *inter sese* relationship as partners.

### c.  The Plaintiff's Proposed Partnership Claims Are Not Futile

The plaintiff argues that a valid partnership existed between herself and defendant Herman and that both of them chose to use Herman's existing limited liability corporation as the "vehicle" for carrying out their business.  Proposed 2d Am. and Supp. Compl. ¶ 10.  The plaintiff alleges that despite the absence of a written partnership or operating agreement, she and Herman maintained their agreement to operate as partners, an agreement that defendant May later joined.  *Id*. ¶ 14.

The Supreme Court of Virginia has held that "[w]here persons have deliberately adopted the corporate form to secure its advantages, they will not be allowed to disregard the existence of the corporate entity when it is to their benefit to do so."  *Bogese, Inc. v. State Highway and Transp. Comm'r*, 462 S.E.2d 345, 347 (Va. 1995) (quoting *Board of Transp. v. Martin*, 249 S.E.2d 390, 396 (Va. 1978)).  Several courts have applied this general principle to conclude that the choice of a corporate form effectively ends all aspects of the partnership relationship that preceded it.  *See, e.g.*, *Sun River Stock & Land Co. v. Montana Trust & Savings Bank*, 262 P.

1039, 1045 (Mont. 1928) (holding that "[p]ublic policy will not permit a copartnership to do business in the guise of a corporation, nor allow the partners to be a corporation as to the rest of the world while as between themselves the enterprise, conducted in the corporate form, is in fact a joint venture"); *Jackson v. Hooper*, 75 A. 568, 571 (N.J. 1910) (holding that if partners "adopt the corporate form with the corporate shield extended over them to protect them against personal liability, they cease to be partners, and have only the rights, duties, and obligations of stockholders"); *Miglietta v. Kennecott Copper Corp.*, 25 A.D.2d 57, 58 (N.Y. App. Div. 1966) (holding that shareholders in a corporation who acquired assets in an alleged joint partnership venture, but with no written agreement, would be bound to remedies as shareholders).

Despite the general principle that persons cannot disregard the corporate form to their advantage, some courts have enforced partnership rights and remedies among and against corporate shareholders who use the corporate form to achieve business enterprises, but agree among themselves to act and be treated as partners internally. *Cressy v. Shannon Continental Corp.*, 378 N.E.2d 941, 945 (Ind. App. 1978) (holding that partnership rights and remedies may be enforced among members of an incorporated entity when the intention to operate as partners "is manifest and no harm results to outsiders thereby"); *see also Deeds v Gilmer*, 174 S.E. 37, 77 (1934) (holding that where partners formed a corporation in which they were the only shareholders and continued to conduct the business as a partnership, the partner relationship of confidence is presumed to continue).

Crucial to factual situations where courts have imposed partnership remedies on members of a corporate entity is (1) evidence of the actual intentions of the parties, *Cressy*, 378 N.E.2d at 945, and (2) evidence of the actual operations of the partnership/corporate entity, *Boyd, Payne, Gates & Farthing, P.C. v. Payne, Gates, Farthing & RADD, P.C.*, 422 S.E.2d 784,

788 (Va. 1992) (holding that lawyers in a Virginia professional corporation were estopped from denying the existence of a partnership relationship between them because they continued to conduct themselves as partners, including dispersing profits as partners and filing partnership tax returns, after incorporation); *see also Berman v. Physical Medicine Associates, Ltd.*, 225 F.3d 429, 434 (4th Cir. 2000) (distinguishing the factual situation before it from that in *Boyd, Payne* because the parties had "clearly elected to function through the corporate form, and they adhered to that choice virtually without exception").  Just as alleged "partners" who actually operate as shareholders cannot disregard the corporate form they have chosen, neither may corporate shareholders who in all other aspects actually operate as partners among themselves disregard the choice to so operate.  Absent any showing of duress or fraud, the choice to incorporate is powerful evidence of an intent not to operate as partners; it has thus been held that in the absence of a formal agreement to operate *inter sese* as partners within a corporation, the burden of proving such an intention and demonstrable relationship lies with the party seeking to establish its existence.  *Heck & Paetow Claim Service, Inc. v. Heck*, 286 N.W.2d 831, 836 (Wis. 1980).

Ultimately, at this stage of the case, the plaintiff should be allowed to assert alternative theories of recovery under the liberal pleading policy embraced by the Federal Rules of Civil Procedure, and her complaint should not be dismissed because such theories are inconsistent with one another.  *E.g., Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) (holding that claims or defenses in pleadings need not be consistent, and the allegation of inconsistent claims does not constitute an admission of any averment).  Conclusive determinations about the parties' intentions and the actual internal operations of RCA Urban, LLC necessitate a degree of evidence not required of a complaint to survive a motion to dismiss.  *See Krieger*, 211 F.3d at 136 (holding that plaintiffs need not "plead law or match facts to every element of a legal

theory" in their complaint).  While the court states no opinion as to the eventual merits of the plaintiff's partnership theory of liability, the court does hold that the plaintiff has met her burden under Rules 8(a) and 12(b)(6).  Proposed counts one through three, therefore, are not futile by reason of failure to state a claim upon which relief may be granted.

**d.  The Plaintiff's Claims Under Virginia's Limited Liability Statute are not Futile**

The plaintiff also proposes claims for numerous "statutory violations" of Virginia's Limited Liability Company Act[7] and seeks a declaration of her rights and a dissolution and winding up of CRA Urban, LLC pursuant to Virginia Law.  Proposed 2d Am. and Supp. Compl. ¶ 36-45.  The majority of the "statutory violations" that the plaintiff alleges constitute individual injuries to her, and not corporate injuries.  For example, the right to "true and full information regarding the state of the business and financial condition of the limited liability company," Va. Code § 13.1-1028.B.2, is specifically granted to members of an LLC regardless of their minority status, and the deprivation of this right cannot be described as an injury to the LLC.  The plaintiff's allegations of wrongful withholding of distributions is similar to the wrongful withholding of dividends, which solely injures the plaintiff.  The plaintiff's allegation that she and her membership interest were involuntarily dissociated from CRA Urban, LLC, without meeting any of the requirements of Va. Code § 13.1-1040.1, involves the denial of shareholder voting rights, and is also a distinctly individual injury.

---

[7] These alleged statutory violations include: wrongful exclusion from the management of CRA Urban, LLC;  wrongfully preventing the defendants from access to CRA Urban, LLC's information, including its business and financial condition, business records and financial records; wrongfully preventing CRA Urban, LLC from paying a debt owed to the plaintiff; wrongfully dissociating or terminating the plaintiff as a participating member in CRA Urban, LLC; wrongfully transferring assets and CRA Urban, LLC's entire business to Urban Realty, LLC; wrongfully preventing the plaintiff from receiving distributions from CRA Urban, LLC; wrongfully interfering with the plaintiff's right to "the unimpeded and continued ownership and enjoyment" of her membership interest; and wrongfully publishing false statements about her status as a member of CRA Urban, LLC in business communications.  Proposed 2d Am. and Supp. Compl. ¶ 40.

The Supreme Court of Virginia has adopted the "overwhelming majority rule" that a claim for an injury to a corporate entity against a manager or officer must be brought derivatively. *Simmons v. Miller*, 544 S.E.2d 666, 674 (Va. 2001) (noting that "[t]he overwhelming majority rule is that an action for injuries to a corporation cannot be maintained by a shareholder on an individual basis and must be brought derivatively"). Virginia's LLC Act provides for derivative actions by members, Va. Code § 13.1-1042 (stating that "[a] member may bring an action in the right of a limited liability company to recover a judgment in its favor to the same extent that a shareholder may bring an action for a derivative suit"), but does not expressly block members from pursuing direct actions against other members of an LLC. Furthermore, the Virginia LLC Act at least implicitly recognizes circumstances in which members of a limited liability company may seek to sue managers and/or other members of a limited liability company individually. Va. Code § 13.1-1025(A) (limiting the monetary amount for which members or managers of an LLC may be held liable "[i]n any proceeding brought by or in the right of a limited liability *or brought by or on behalf of members* of the limited liability company") (emphasis added).

This court holds that a more precise determination of the kinds of injuries suffered by the plaintiff, as opposed to CRA Urban, LLC, and the validity of a direct action as opposed to a derivative action, requires factual development. *Johnson v. American General Ins. Co.*, 296 F. Supp. 802, 809-10 (D.D.C. 1969) (noting that the distinction between a derivative or an individual cause of action may require factual development); *Abelow*, 156 A.2d at 420 (granting leave to amend the plaintiff's complaint to allege an individual rather than a corporate injury because the "line of distinction" between direct and derivative suits is "often a narrow one," and the court was "not convinced that plaintiffs should be summarily denied the right to couch their

complaint in terms which seek a remedy for alleged personal injury"). To summarize, the court makes no conclusions about the actual merits of each of the several "statutory violations" alleged in count five of the proposed second amended and supplemented complaint, but holds that they are not futile for failure to state a claim.

### e.  The Plaintiff's Claims for Conversion and Equitable Relief are Not Futile

The defendants argue that the plaintiff's proposed claims for conversion and for equitable relief are futile because the plaintiff owns no personal property that could be the subject matter of a constructive trust in equity, nor any personal property which could support a common-law conversion claim, other than "undocumented and intangible property rights such as those alleged by Wright[.]" Opp'n at 8. The court has already addressed and rejected the rationale of this argument. Moreover, the language of the Virginia's LLC statute undermines the plaintiff's argument; as the status states, a member's "membership interest in a limited liability company is personal property." Va. Code § 13.1-1038 (stating that the "[n]ature of interest in limited liability company"). The plaintiff's claims for conversion and equitable relief therefore are not futile.

### f.  The Plaintiff has not Unduly Delayed in Seeking Amendment

A court should not deny leave to amend based solely on time elapsed between the filing of the complaint and the request for leave to amend. *Atchinson v. District of Columbia*, 73 F.3d 418, 426 (D.C. Cir. 1996). Rather, the court should take into account the actions of other parties and the possibility of resulting prejudice. *Id.* The defendants will not be prejudiced by this court's grant of leave to amend, particularly because the arguments the defendants raise in their motion to dismiss, by their own admission, go to the same flaws that they allege persist in the plaintiff's proposed second amended and supplemented complaint, and which they raise in their

opposition.  Opp'n at 2.  Accordingly, the court holds that the plaintiff did not unduly delay in seeking to amend and that, therefore, her motion to amend should not be denied on that basis.

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion to amend and supplement her compliant.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued on this 19th day of July, 2005.

RICARDO M. URBINA
United States District Judge